**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 1, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 1, 2022

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 100051-1 |
| | ) | |
| DERRIUS FORCHA-WILLIAMS, | ) | En Banc |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed: December 1, 2022 |

OWENS, J.—A jury found Derrius Forcha-Williams guilty of second degree rape for an incident that occurred when he was 16 years old. He was sentenced to an indeterminate sentence with a minimum term of 120 months and a maximum term of life. On collateral review, the Court of Appeals held Forcha-Williams was entitled to resentencing because *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), was a significant and material change in the law that applies retroactively to Forcha-Williams' sentence. In granting the petition for resentencing, the Court of Appeals held that *Houston-Sconiers* gives judges the discretion to impose a determinate sentence instead of the indeterminate sentence required by the legislature for offenders convicted of second degree rape. Additionally, the Court of Appeals held a petitioner establishes actual and substantial prejudice if they show the sentencing

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

court failed to consider the mitigating qualities of the offender's youth and/or failed to understand their absolute discretion to impose an exceptional sentence downward.

We reverse the Court of Appeals on both issues. First, *Houston-Sconiers* gives judges the discretion to impose a sentence below the minimum term in an indeterminate sentence but not the discretion to alter the maximum punishment chosen by the legislature or to impose a determinate sentence in lieu of an indeterminate sentence. Second, a *Houston-Sconiers* procedural error by itself does not constitute per se prejudice on collateral review. Because Forcha-Williams fails to show prejudice by a preponderance of the evidence, we dismiss his petition.

## I. FACTS AND PROCEDURAL HISTORY

In 2015, a jury convicted Forcha-Williams of committing rape in the second degree when he was 16 years old and enrolled in a juvenile drug diversion program. The trial court imposed an indeterminate sentence as required by RCW 9.94A.507.

Under RCW 9.94A.507(1) and (3)(b), nonpersistent offenders convicted of rape in the second degree must be sentenced to an indeterminate sentence of the maximum statutory sentence for the offense and a minimum term within the standard range for the offense. Rape in the second degree is a class A felony that carries a maximum term of life in prison. RCW 9A.44.050(2); RCW 9A.20.021(1)(a). Meanwhile, the standard range for second degree rape for a defendant with an offender score of 3 is 102-130 months. RCW 9.94A.510. Under these parameters, the trial court sentenced

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

Forcha-Williams to a midrange minimum term of 120 months and the mandatory maximum term of life in prison.

At the sentencing hearing, defense counsel, the victim, and two witnesses raised Forcha-Williams' youth as a mitigating factor. The victim first raised Forcha-Williams' youth, stating, "I am sorry that he is however young he is, and that he is facing this, but basically he did it to himself." State's Resp. to Pers. Restraint Pet., App. C (Sent'g Tr.) at 918. She explained, however, "I don't want him put away for life, you know, but—because of his age. That's the only reason. You know, he is young, and maybe he will learn from his mistakes; maybe he will take this opportunity to get an education." *Id.*

Defense counsel spoke next about Forcha-Williams' youth. He noted the effect that Forcha-Williams' childhood environment had on him, stating, "[T]here was also a real dark side to Derrius's childhood—issues of homelessness, parents with problems with the criminal justice system, some really chilling physical and psychological abuse that he went through as a kid." *Id.* at 919. Defense counsel tied Forcha-Williams' poor decision-making to his youth and noted his capacity for change.

> *And you know when we look at adolescent development, when we look at choices and decision-making, and I think we put them in that context,* Derrius had a lot against him, and as a young man . . . he is going to have a lot stacked against him, but he is an intelligent man, and even sitting downstairs when he was talking during the PSI, he was talking about his goals of getting an education, of getting a job, of doing something with his life when he gets out of the system.

3

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

*Id.* at 920 (emphasis added). After requesting the minimum term of 102 months, defense counsel explained Forcha-Williams had difficulty understanding the sentence he faced, given his age: "I think, particularly for folks as young as Derrius, the sentence concepts like life and indeterminacy are really hard for them to wrap their heads around. And that's why Derrius and I had a lot of discussions about it." *Id.* at 921.

Jocelyn Conway, a juvenile probation counselor and juvenile drug court program manager at King County Superior Court also spoke on Forcha-Williams' behalf. She described Forcha-Williams as "a young man with much promise . . . and I still think he still possesses that promise." *Id.* at 923. And like defense counsel, Ms. Conway also discussed the impact of Forcha-Williams' home life.

> There was a lot of transition in the home. There was a lot of transition around him, supervision—of adults in his life—was challenging.
>
> So I would say today we take all those things into consideration—not minimizing the charge that is before, what he has been found guilty of.

*Id.* at 924. She implored the court to look at sentencing from a broader perspective, pointing out that Forcha-Williams volunteered to enter drug court as "a 16-year-old kid" and has "gained a lot from us staying on board." *Id.* at 924-25.

Stephen Dozier, a mentor at Royal Project, an intensive case management mentor program, also discussed Forcha-Williams' capacity to rehabilitate: "I'm sure

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

that punishment is going to be imposed today, but Derrius is redeemable. He's very redeemable. He is very open to treatment. He was very open to drug court. He's very open to help." *Id*. at 926. Mr. Dozier also spoke about the effect of trauma on Forcha-Williams.

> You know, for a lot of our kids—a lot of our kids, you know, we see it over and over in the news. A lot of our kids are facing—are dealing with a lot of trauma.
>
> Derrius is not, he is not the exception. He is—he has dealt with a lot of trauma in his life.

*Id.* Mr. Dozier continued, emphasizing Forcha-Williams' youthfulness and the effect his disadvantaged childhood had on him: "As you impose the sentence, I really beg of you to understand that this child is redeemable. . . . I'm sure that if this child was born into a household . . . if the playing field were level all the way around, this child would be going to an institute of higher learning. He wouldn't be going to an institution of corrections." Id. at 927.

In addition to this testimony, the sentencing court also reviewed the "Pre-Sentence Investigation Report" (PSIR) prepared by the Department of Corrections. The PSIR contains information on Forcha-Williams' family and home environment, school history, disciplinary record, and criminal history. According to the PSIR, Forcha-Williams had one felony conviction and two deferred dispositions at the time of sentencing. He had also been expelled from Federal Way High School and had a history of assaultive behavior at school.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

After hearing the testimony, Judge Thorpe addressed Forcha-Williams'

youthfulness.

> Mr. Forcha-Williams, I have thought—thought a lot about your case, sir. It is incredibly indicative of what happens when kids step out of schooling. I see it time and time again.
>
> You are a young man. You had a lot of support systems around you at the time that—things were really going down—expulsion, substance use—and all of those things are considerations, but ultimately I think in the course of time that this case has pended, and in the course of the trial, you learned a lot more about the consequences of what your actions can do.
>
> I will never know if at the time this happened you thought for a second about what the consequences or results could have been, but that doesn't change the fact that it happened. It just doesn't.

*Id.* at 929-30.

Judge Thorpe then spoke about the limits she perceived on her discretion.

> I know that the juvenile system is very different than the adult system—little discretion, available remedies. And so I want you to understand, and I have no doubt in my mind that [defense counsel] has explained this to you a lot, but as your sentencing judge, the legislature has passed the Sentencing Reform Act.
>
> What the legislature has done is it tells me what range I have. It tells me what I can do.
>
> I understand that a lot of people think that sentencing is where judges have the most discretion, but I am fairly certain your counsel probably told you about ranges and how in particular with this type of charge it is a life sentence. There is nothing I can do that changes that.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

> What I do today is set the minimum amount of time that you will serve.
>
> After that, the indeterminate review board decides when you get released.
>
> I have no control over the indeterminate review board. No one in this room does. It is ultimately their decision.

*Id.* at 930. She stated, "You are a young man and I truly hope that you make the best use of your time and become a fully functional member of society, but you have a lot of growth to do. I am imposing 120 months." *Id.* at 931. Acknowledging the path ahead, Judge Thorpe told Forcha-Williams, "It's not easy. I think as you sit here you have seen how not easy it is to go from being a teenager to an adult, from being a kid to an adult. We treat them differently, don't we?" *Id.* at 932.

In 2018, Forcha-Williams filed a collateral attack, claiming he was entitled to resentencing under *Houston-Sconiers* because the trial court neither adequately considered his youth nor understood the extent of its discretion to impose a lesser sentence. He argued, "Now, [the sentencing judge] has broad discretion in setting the minimum term." Mot. for Relief from J. and to Set Show Cause Hr'g at 5 (Wash. Ct. App. No. 79041-2-I (2020)); *see also* Pet'r's Suppl. Br. at 4 (Wash. Ct. App. No. 79041-2-I (2020)) ("If the judge had understood that she had absolute discretion to impose a sentence as low as zero, there is a reasonable probability that she would have imposed a lesser sentence."). Forcha-Williams' petition was stayed twice while this

7

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

court considered *In re Personal Restraint of Meippen*, 193 Wn.2d 310, 440 P.3d 978 (2019); *In re Personal Restraint of Ali*, 196 Wn.2d 220, 474 P.3d 507 (2020), *cert. denied*, 141 S. Ct. 1754 (2021); and *In re Personal Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 474 P.3d 524 (2020), *cert. denied*, 141 S. Ct. 1753 (2021). Following those cases, the State conceded that *Houston-Sconiers* was a significant and material change in the law that applies retroactively to Forcha-Williams' sentence so that his petition is not time barred. The Court of Appeals accepted the concession[1] and proceeded to the merits.

The Court of Appeals held that under *Domingo-Cornelio*, a defendant establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration. *In re Pers. Restraint of Forcha-Williams*, 18 Wn. App. 2d 167, 178, 490 P.3d 255 (2021) (quoting *Domingo-Cornelio*, 196 Wn.2d at 267-68). Under this standard, the Court of Appeals held Forcha-Williams was entitled to resentencing because while the trial court considered the mitigating qualities of youth, it did not

---

[1] As discussed below, the claims in Forcha-Williams' petition are not time barred. The Court of Appeals accepted the concession and reframed the relief sought to hold that the resentencing judge can impose a determinate sentence. The State petitioned for review on *that* issue. Although the reframed issues are time barred, the original petition is not. In the interest of judicial economy, we address the issues as they stand, *see In re Pers. Restraint of Fowler*, 197 Wn.2d 46, 52-53, 479 P.3d 1164 (2021) (this court has inherent power to consider untimely collateral attacks), rather than remanding the original petition to the Court of Appeals as the dissent suggests, *see* dissent at 6-7, 21.

8

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

understand its discretion to impose an exceptional sentence downward based on the mitigating qualities of youth. Additionally, the Court of Appeals held that upon resentencing, the judge has discretion to impose a determinate sentence instead of the indeterminate sentence required by statute. The State petitioned for review of both of these issues, which we granted.

## II. ANALYSIS

A. *Sentencing Courts Lack Discretion To Lower the Maximum Term in an Indeterminate Sentence or Impose a Determinate Sentence Where the Legislature Requires an Indeterminate Sentence*

This case first asks how much discretion judges have under *Houston-Sconiers* when imposing exceptional downward sentences based on a juvenile offender's youth. Specifically, this case asks whether the Eighth Amendment to the United States Constitution, as interpreted by *Houston-Sconiers*, gives judges the discretion to impose a determinate sentence instead of the mandatory indeterminate sentence required by the legislature.

In answering this question, we rely on the separation of powers and our Eighth Amendment jurisprudence. These sources counsel against giving judges the discretion to upend an indeterminate sentencing scheme chosen by the legislature. Accordingly, we hold that *Houston-Sconiers* does not give judges the discretion to impose a determinate sentence where the legislature has mandated an indeterminate sentence. Rather, *Houston-Sconiers* gives judges the discretion to impose an

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

indeterminate sentence with a minimum term below the minimum term set by the legislature when required by the mitigating qualities of the offender's youth.

> ### 1. *Fixing Criminal Punishments Is a Plenary Legislative Function Limited Only by the Prohibition against Cruel and Unusual Punishment*

In considering the discretion an individual judge has in sentencing a juvenile offender, we are cognizant of the judiciary's role in our constitutional structure under the lens of the separation of powers.

Over 80 years ago, we stated the "[f]ixing of penalties or punishments for criminal offenses is a legislative function, and the power of the legislature in that respect is plenary and subject only to constitutional provisions against excessive fines and cruel and inhuman punishment." *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937). Similarly, we have said that "it is the function of the legislature and not of the judiciary to alter the sentencing process." *State v. Monday*, 85 Wn.2d 906, 909-10, 540 P.2d 416 (1975), *overruled on other grounds by In re Pers. Restraint of Phelan*, 97 Wn.2d 590, 647 P.2d 1026 (1982). Accordingly, setting and altering criminal penalties is the sole prerogative of the legislature, and the judicial branch may only intervene when the legislature's chosen punishment violates the Eighth Amendment to the United States Constitution or article I, section 14 of the Washington Constitution.

Under these principles, this court has repeatedly stopped the judiciary from encroaching on the legislature's plenary authority to set criminal punishments. In

10

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

*State v. Pillatos*, we held trial courts lack the inherent authority to empanel a jury to determine whether an exceptional sentence should be imposed. 159 Wn.2d 459, 469-70, 150 P.3d 1130 (2007). We reasoned that creating a procedure to empanel juries is a legislative function, and in the absence of any legislative enactment creating such a procedure, the judiciary would "'usurp the power of the legislature.'" *Id*. at 469 (quoting *State v. Hughes*, 154 Wn.2d 118, 152, 110 P.3d 192 (2005), *overruled in part on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). Under the same reasoning, we later held trial courts lacked authority to deviate from the legislature's prescribed exceptional sentencing procedures, even when later deemed invalid, by submitting special interrogatories to juries at trial. *State v. Davis*, 163 Wn.2d 606, 616-17, 184 P.3d 639 (2008).

In the most analogous adult sentencing case, we held a trial judge exceeded his statutory authority by imposing a 20-year determinate sentence where the legislature required an indeterminate sentence with a 20-year minimum term. *In re Pers. Restraint of Yates*, 180 Wn.2d 33, 39, 321 P.3d 1195 (2014). In that case, we stated the judge improperly exercised the authority of setting a maximum sentence by choosing a determinate sentence. *Id.* We clarified that "[t]he authority for determining the maximum sentence rests with the Indeterminate Sentencing Review Board" under RCW 9.95.011(1) and not with the sentencing judge. *Id.*

The reasoning behind *Yates* plainly applies here. Like the murder convictions in *Yates*, Forcha-Williams' conviction for rape in the second degree carries an

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

indeterminate sentence. RCW 9.94A.507(1)(a)(i). For this sentence, the legislature has established the required minimum and maximum terms. The minimum term must either be within the standard sentence range for the offense or outside the standard range under RCW 9.94A.535 if substantial and compelling reasons justify an exceptional sentence. RCW 9.94A.507(3)(c)(i). While the minimum term provision gives judges some discretion, the maximum term provision is inflexible—the maximum term is the statutory maximum sentence for the offense. RCW 9.94A.507(b). Here, rape in the second degree is a class A felony carrying a maximum sentence of life in prison. RCW 9A.44.050(2); RCW 9A.20.021(1)(a). Thus, the legislature has prescribed the minimum and maximum terms a judge must impose for rape in the second degree.

Beyond imposing the minimum and maximum, the sentencing judge lacks the statutory authority to alter an indeterminate sentence or decide when the offender is released. This lack of express authority binds the sentencing judge's hands. *See State v. Barber*, 170 Wn.2d 854, 872, 248 P.3d 494 (2011) (while a court may exercise discretion in sentencing, "it must do so within the bounds of the sentencing laws"). Instead, the authority to decide when a sex offender is released is vested with the Indeterminate Sentence Review Board (ISRB). RCW 9.94A.507(5)-(6); RCW 9.95.420, .010, .011.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

Accordingly, without statutory authority, the judicial branch may alter the legislature's chosen punishment only when it violates the constitutions. *Mulcare*, 189 Wash. at 628.

### 2. The Eighth Amendment Gives Judges Discretion To Impose Only a Sentence Below the Minimum Term in an Indeterminate Sentence

To infringe on the legislature's plenary power to set criminal sentences, the sentence must violate the Constitution. To that end, we consider whether our Eighth Amendment cases grant judges the discretion to impose a determinate sentence in lieu of the indeterminate sentence required by the legislature.

We start our analysis at the same place as the Court of Appeals by addressing *Houston-Sconiers*. In *Houston-Sconiers*, we announced a new substantive rule that the Eighth Amendment prohibits imposing adult standard SRA[2] ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished culpability. *Ali*, 196 Wn.2d at 237. To effectuate that substantive rule, we announced two procedural rules we have characterized as the "dual mandates" of *Houston-Sconiers*. *Id.* at 236. First, sentencing courts must consider the mitigating qualities of youth, and second, they must have discretion to impose sentences below what the SRA mandates. *Houston-Sconiers*, 188 Wn.2d at 21.

Our decision in *Houston-Sconiers* was an expansion of *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). *See Ali*, 196 Wn.2d at 241-42

---

[2] Sentencing Reform Act of 1981, ch. 9.94A RCW.

13

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

(difference between *Houston-Sconiers* and *Miller* "is one of scope, not of kind").  We

noted that like *Miller*, *Houston-Sconiers* protects juveniles from receiving certain

disproportionate sentences; the difference is that *Houston-Sconiers* prohibits a broader

category of punishments.  *Id.*  Instead of prohibiting only mandatory life without

possibility of parole sentences, *Houston-Sconiers* prohibits courts from imposing any

mandatory adult sentence on juveniles who possess diminished culpability.  *Id.* at 242.

But *Houston-Sconiers* centers on the same substantive rule as *Miller*: the Eighth

Amendment requires punishment proportionate to culpability.  *Id.* at 241.

Instead of addressing *Houston-Sconiers'* substantive rule, the Court of Appeals

focused on the latter of *Houston-Sconiers'* dual mandates: a sentencing court's

discretion to impose a sentence below what the SRA mandates.  Specifically, the

Court of Appeals highlighted our language that "sentencing courts must have *absolute*

*discretion* to depart as far as they want below otherwise applicable SRA ranges."

*Houston-Sconiers*, 188 Wn.2d at 9 (emphasis added).  Relying on that language, the

Court of Appeals stated, "[A]bsolute discretion does not prevent a court from

imposing an indeterminate sentence that considers time for rehabilitation and

maturity."  *Forcha-Williams*, 18 Wn. App. 2d at 181.  Rather, the Court of Appeals

reasoned that absolute discretion "allows courts to determine whether the SRA's

minimum term and indeterminate maximum life term required for adults are

appropriate in consideration of the mitigating qualities of youth."  *Id.*  Thus, the Court

of Appeals concluded sentencing judges have discretion to lower the minimum and

14

maximum terms in an indeterminate sentence and can even replace an indeterminate sentence with a determinate sentence. *Id.* at 176, 181.

We disagree with the Court of Appeals about the scope of *Houston-Sconiers'* substantive and procedural rules. We now take the time to (1) reiterate the constitutional basis for *Houston-Sconiers* and (2) explain the contours of *Houston-Sconiers'* substantive and procedural rules as they apply to a juvenile sentenced to an adult standard range indeterminate sentence.

First, *Houston-Sconiers* is rooted in the Eighth Amendment to the United States Constitution. We expressly refused to consider any state constitutional arguments as they were not raised in the courts below. *Houston-Sconiers*, 188 Wn.2d at 21 n.6. We clarified this point in *State v. Gregg*, stating "[*Houston-Sconiers*] was decided on Eighth Amendment grounds, not independently under article I, section 14." 196 Wn.2d 473, 480, 474 P.3d 539 (2020). Therefore, any analysis stemming from *Houston-Sconiers* must be rooted in the Eighth Amendment.

Second, any application of *Houston-Sconiers'* procedural elements to an indeterminate sentence must be tied to the substantive rule that prohibits imposing an adult standard range that would be disproportionate punishment for a juvenile who possesses diminished culpability. *Ali*, 196 Wn.2d at 237. We emphasize this point to clarify that the Eighth Amendment does not give judges "absolute discretion" carte blanche to impose any sentence. Rather, it gives judges "absolute discretion to impose any sentence below the SRA range or enhancements in order to protect

15

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

juveniles who lack adult culpability from disproportionate punishment." *Domingo-Cornelio*, 196 Wn.2d at 265. In other words, with the adult standard range as a starting point, judges may exercise their discretion to sentence a juvenile below the adult standard range based on the specific juvenile's diminished culpability.

The question here is whether *Houston-Sconiers* gives judges the discretion to lower both the minimum and maximum terms in an indeterminate sentence.

While *Houston-Sconiers* dealt with a determinate sentence, its logic applies to the minimum term of an indeterminate sentence. Under *Houston-Sconiers*, we reasoned that discretion to impose a sentence below an adult range determinate sentence mitigates the risk of disproportionate punishment. The same is true regarding the minimum term in an indeterminate sentence since it, like a determinate sentence, represents the mandatory term of incarceration. Thus, under *Houston-Sconiers*, when a sentencing judge is required to impose an indeterminate sentence, he or she has discretion to impose a minimum term below the standard SRA range.

The remaining question, raised sua sponte by the Court of Appeals, is whether a sentencing court may lower the maximum term in an indeterminate sentence. None of our prior cases contemplated an indeterminate sentence, but the manner in which we described a judge's discretion to alter a determinate sentence informs our decision here.

Consider our rationale in *Ali*. In that case, the defendant faced a standard SRA range of 312 to 390 months. *Ali*, 196 Wn.2d at 227. But under *Houston-Sconiers*, we

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

recognized the sentencing court could impose any sentence below the SRA, including no prison time. *Id.* at 246. "Thus, under *Houston-Sconiers*, Ali's sentencing range went from 312-390 months to 0-390 months." *Id.* This analysis suggests a judge may lower only the bottom end of a sentence because it represents the mandatory amount of time an offender must serve. Conversely, the maximum term is not mandatory; a judge is never required to sentence an offender to the highest point in a sentencing range, especially where an offender possesses diminished culpability based on youth.

The same logic bears out with the maximum term of an indeterminate sentence. The maximum term of an indeterminate sentence does not raise the same risk of disproportionate punishment as the minimum term because the offender is not mandated to serve the maximum term. Instead, an indeterminate sentence provides an opportunity for release to those who demonstrate rehabilitation. For offenders like Forcha-Williams, there is a statutory presumption of release upon serving the minimum term unless the ISRB finds the offender likely to commit sex offenses if released. RCW 9.95.420(3)(a). The connection between release and an offender's rehabilitation alleviates the concern that a sentence beyond the minimum term will be disproportionate.

Again, we stress that the Eighth Amendment is violated only when a juvenile who possesses diminished culpability is mandatorily sentenced to an adult standard range or enhancement. But where this substantive rule is not violated, no procedural mechanism—discretion to impose a lesser sentence—is required. Thus, discretion is

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

not required where a juvenile does not face a mandatory adult sentence in whole or in part.  Here, the only mandatory portion of Forcha-Williams' adult indeterminate sentence is the minimum term.  We cannot say how long an individual adult will serve in an indeterminate sentence.  Thus, there is no adult sentence to compare Forcha-Williams' sentence to beyond the minimum term.  Therefore, it cannot be said that any juvenile faces an adult range sentence beyond the minimum term.  Additionally, to the extent a juvenile serves additional time beyond the minimum term, that period of incarceration is directly tied to their rehabilitation, which poses no facial disproportionality issue.  Therefore, the maximum term chosen by the legislature should remain undisturbed by judicial intervention.

Accordingly, we hold where the legislature has chosen an indeterminate sentencing scheme, *Houston-Sconiers* gives judges the discretion to impose a minimum term below the statutory minimum to protect juveniles who lack adult culpability from disproportionate punishment.  But *Houston-Sconiers* does not give judges the discretion to lower the maximum punishment or impose a determinate sentence.[3]  Rather, the maximum term in an indeterminate sentencing scheme remains

---

[3] As such, *Houston-Sconiers* is material to Forcha-Williams' original petition, which challenged his minimum term.   Conversely, *Houston-Sconiers* is not material to a petition that challenges the statutory maximum.  *See In re Pers. Restraint of Williams*, No. 100296-3, slip op. at 9 (Wash. Dec. 1, 2022).  Here, the Court of Appeals reframed the issues and broadened the scope of *Houston-Sconiers* to authorize relief not initially requested by Forcha-Williams.  *See* Notation Ruling, No. 79041-2-I (Wash. Ct. App. May 26, 2021) (requesting supplemental briefing on whether the "absolute discretion" afforded to sentencing courts includes the ability to disregard indeterminate sentences).

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

beyond a judge's discretion because it does not represent a mandatory term of confinement.

B.  *A Petitioner Does not Establish Actual and Substantial Prejudice Solely by Showing a* Houston-Sconiers *Error*

The second issue in this case is whether a procedural *Houston-Sconiers* violation per se constitutes actual and substantial prejudice on collateral review.

The parties do not dispute that a procedural *Houston-Sconiers* error occurred. As the sentencing transcript makes clear, Judge Thorpe articulated her belief that she had no discretion to impose a sentence below the SRA range.  This is a procedural error.  The ultimate question, however, is whether Judge Thorpe's failure to understand her discretion constituted a violation of the Eighth Amendment's substantive rule prohibiting punishment disproportionate to culpability.

The Court of Appeals held that a violation of either procedural rule in *Houston-Sconiers*—failing to consider the mitigating factors of youth or failing to appreciate the discretion to impose a sentence below the SRA range—constitutes per se prejudice on collateral review.  18 Wn. App. 2d at 178.  But this reading contradicts precedent.

We reverse the Court of Appeals and clarify that *Domingo-Cornelio* did not establish a per se prejudice rule based solely on a *Houston-Sconiers* error.  Rather, a petitioner must show by a preponderance of the evidence that his sentence would have been shorter if the sentencing judge complied with *Houston-Sconiers*.  This requires something more than merely showing the judge did not comply with *Houston-*

19

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

*Sconiers'* dual mandates.  Under *Ali*, a petitioner meets this burden where a judge is presented with mitigating qualities of the offender's youth but does not understand their discretion and sentences the juvenile to the minimum term required by statute. Similarly, under *Domingo-Cornelio*, a petitioner meets this burden when a judge does not consider the mitigating qualities of the offender's youth and sentences the juvenile to the minimum term required by statute.

   1.  Meippen *Held that a Procedural* Houston-Sconiers *Error by Itself Does Not Constitute Actual and Substantial Prejudice on Collateral Review*

   This court has long held a petitioner alleging constitutional error on collateral review must show by a preponderance of the evidence that he was actually and substantially prejudiced by the alleged error.  *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004) (citing *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810, 792 P.2d 506 (1990)).  This standard adds an extra hurdle for those seeking collateral relief in accord with our long-standing view of "limit[ing] the availability of collateral relief because it undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders."  *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 329, 823 P.2d 492 (1992).  Recognizing these values, we stated in *St. Pierre* that "we decline to adopt any rule which would categorically equate per se prejudice on collateral review with per se prejudice on direct review."  *Id.*  Our recent cases, starting with *Meippen*, have consistently adhered to this principle.

20

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

In *Meippen*, we required a petitioner alleging a procedural *Houston-Sconiers* violation to prove by a preponderance of the evidence that his sentence would have been shorter if the sentencing judge had complied with *Houston-Sconiers'* dual mandates. 193 Wn.2d at 316. We concluded Meippen fell short of this burden because the trial court considered "Meippen's age, immaturity, and failure to appreciate the consequences of his actions" and still imposed a top-end standard range. *Id.* Moreover, we noted the court had discretion under the SRA to impose an exceptional sentence downward based on Meippen's youth but declined to do so. *Id.*

Further, we stated actual and substantial prejudice requires more than "a mere possibility that the trial court could have departed from the SRA in light of *Houston-Sconiers*." *Id.* at 317. Rather, we required some evidence in the record showing the judge would have imposed a lower sentence. *See id.* ("[n]othing in our record suggests that the trial court would have exercised its discretion to depart from the SRA sentence enhancement guidelines"). In that case, we looked to (1) whether the judge was presented with and considered the mitigating qualities, if any, of the offender's youth, and (2) in light of those qualities, where the imposed sentence fell within the standard range. *Id.* at 316-17. Considering these factors, we noted, "The trial court determined that Meippen's actions were cold and calculated, and it clearly intended to impose a sentence at the top of the standard range despite Meippen's youth." *Id.* at 317.

21

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

In sum, *Meippen* rejected a per se prejudice rule, requiring petitioners on collateral review to show more than just a procedural *Houston-Sconiers* error.

> 2. *Under* Ali*, a Petitioner Establishes Actual and Substantial Prejudice Where the Sentencing Court Finds the Offender has Mitigating Qualities of Youth and Sentences the Juvenile to the Minimum Term in the Standard Range*

In *Ali*, we reiterated a "petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the constitutional error . . . to obtain relief on collateral review." 196 Wn.2d at 242-43. Like *Meippen*, we considered whether the sentencing judge was presented with and considered evidence of Ali's youthfulness and where in the standard range the imposed sentence fell.

Based on those factors, we held Ali demonstrated actual and substantial prejudice. First, we noted the "sentencing judge was presented with, and considered, testimony and evidence regarding the mitigating factors of Ali's youthfulness, but she found that she lacked the discretion to impose an exceptional sentence downward based on those mitigating factors." *Id.* at 243. Second, we noted the judge imposed the minimum sentence that she thought she had discretion to impose under the SRA. *Id.* at 244. Ali faced a standard range of 312 to 390 months. *Id.* at 227. The State recommended 390 months while defense counsel requested an exceptional sentence of 120 months based on Ali's youthfulness. *Id.* The judge imposed a 312-month sentence and noted on the record that "she was imposing what she believed to be the lowest available sentence and that Ali's age was the primary reason she imposed the low end sentence." *Id.* at 244. These two facts—that the judge imposed the lowest

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

standard range sentence and that the reason was primarily the offender's youthfulness—distinguished Ali's case from *Meippen* and showed by a preponderance of the evidence that Ali's sentence would have been lower had the judge fully understood her discretion. *Id.*

*Ali* solidifies that in analyzing prejudice, we must look at whether the judge was presented with and considered the offender's youth, the location of the imposed sentence within the standard range, and whether the judge stated they were imposing the lowest sentence they thought they could because of the offender's youth.

### 3. Domingo-Cornelio *Neither Overturned* Meippen *nor Established a Per Se Prejudice Rule for a* Houston-Sconiers *Violation*

Our most recent case to discuss prejudice in this context is *Domingo-Cornelio*, which was a companion case to *Ali*. The Court of Appeals plucked a single quote from *Domingo-Cornelio* in concluding that a procedural *Houston-Sconiers* error alone establishes prejudice: "'A petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration.'" *Forcha-Williams*, 18 Wn. App. 2d at 178 (quoting *Domingo-Cornelio*, 196 Wn.2d at 267-68). In isolation, this quote appears to establish a per se prejudice rule. But in context, this statement cannot be reasonably construed as establishing a per se prejudice rule that overruled *Meippen*. Consider three points.

23

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

First, we reiterated that "[a] petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the constitutional error in order to obtain relief on collateral review." *Domingo-Cornelio*, 196 Wn.2d at 267.

Second, we noted Domingo-Cornelio's case was distinct from *Ali* because no evidence in the record suggested the sentencing court considered any mitigating circumstances relating to Domingo-Cornelio's youth. *Id.* Under *Ali*, the lack of any evidence of the judge considering Domingo-Cornelio's youth may have doomed Domingo-Cornelio's petition since we relied on that factor to find prejudice in *Ali*. Thus, we stated for the first time that "actual and substantial prejudice is not limited to circumstances where defense counsel makes an argument that is not legally available and the sentencing judge explicitly states that they would deviate from the SRA on that basis if they could." *Id.*

Third, we did not end our analysis after concluding the sentencing judge did not consider the mitigating qualities of youth. Rather, we considered where the imposed sentence fell in the standard range. Domingo-Cornelio faced a standard range of 240 to 318 months, with defense counsel requesting 240 months and the State requesting 318 months. *Id.* at 260. The judge imposed a minimum standard range sentence of 240 months. *Id.* at 261. Relying on this factor, we stated, "That Domingo-Cornelio's sentencing judge imposed the lowest standard range sentence when the State recommended the high end sentence is evidence that the judge was willing to consider

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

mitigating factors that justify a lower sentence." *Id.* at 268. Thus, we concluded, "More likely than not, Domingo-Cornelio would have received a lesser sentence had the court complied with the dual mandates of *Houston-Sconiers*." *Id.*

Our reliance on the fact that the judge imposed the lowest standard range sentence shows a procedural *Houston-Sconiers* error by itself does not establish prejudice. Rather, as *Domingo-Cornelio* and *Ali* show, a procedural *Houston-Sconiers* error must be coupled with some other evidence in the record to show the judge would have imposed a lesser sentence. In particular, the imposition of the lowest standard range sentence is strong evidence that the judge would have imposed a lower sentence if they complied with *Houston-Sconier*'s dual mandates.

Thus, *Domingo-Cornelio* is best understood as establishing a rule that a petitioner shows actual and substantial prejudice where the sentencing judge fails to consider any mitigating qualities of youth and imposes the lowest standard range. And together, *Meippen*, *Ali*, and *Domingo-Cornelio* show us there are numerous factors to consider in determining whether a *Houston-Sconiers* error is prejudicial: whether the judge was presented with and considered the mitigating qualities of the offender's youth, whether the judge understood their discretion, where the imposed sentence falls within the standard range, and whether the judge articulated that they would have imposed a lower sentence if they could.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

### 4. *Forcha-Williams Fails to Demonstrate by a Preponderance of the Evidence That He Would Have Received a Lower Sentence*

Relying on the factors we identified in *Meippen*, *Ali*, and *Domingo-Cornelio*, Forcha-Williams fails to demonstrate by a preponderance of the evidence that he would have received a lower sentence had the sentencing judge fully understood her discretion to impose a sentence below the standard SRA range.

First, the court was presented with and considered the potential mitigating qualities of youth. Defense counsel, Ms. Conway, and Mr. Dozier argued that Forcha-Williams' youth mitigated his culpability and that he was capable of rehabilitation. Moreover, the presentencing report contained information on Forcha-Williams' family and home environment, school history, disciplinary record, and criminal history.

After reviewing this information, the trial court referenced Forcha-Williams' youth several times during the sentencing hearing. Thus, this case is unlike *Domingo-Cornelio* where defense counsel failed to raise any arguments about the mitigating qualities of youth and the court made no reference to youthfulness on the record. Further, while the court was presented with and considered the potential mitigating qualities of youth, the record does not indicate the court thought Forcha-Williams' youth was mitigating and warranted a lesser sentence. Unlike *Ali*, there are no statements in the sentencing transcript indicating the judge tied any mitigating qualities of Forcha-Williams' youth to the sentence imposed. While Judge Thorpe

26

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

could have given a more detailed explanation as to how she accounted for Forcha-Williams' age, ample evidence in the record shows that youth was presented and considered.

Second, unlike *Ali* and *Domingo-Cornelio*, Forcha-Williams did not receive the lowest standard range sentence. His standard range was 102-130 months. The State requested 130 months while defense counsel asked for 102 months. Ultimately, the court sentenced Forcha-Williams to 120 months, four months above the midrange point. This above midrange sentence indicates the trial court did not find Forcha-Williams' youth to be a mitigating factor that required a lesser sentence.

Third, the judge made several statements on the record indicating she did not fully understand her discretion to impose a sentence below the standard range. *See* State's Resp. to Pers. Restraint Pet., App. C (Sent'g Tr.) at 930. But based on the factors mentioned above, it is unclear whether the judge would have exercised her discretion to go below the standard range. Again, a judge's discretion to impose a sentence below the standard range must be tied to the mitigating qualities of the offender's youth. Thus, if the sentencing judge determines the offender's youth does not mitigate their culpability, it necessarily follows the judge would not have exercised their discretion to impose a sentence below the standard range. Indeed, nothing in *Houston-Sconiers* prevents judges from imposing standard adult range sentences on juveniles; they simply have the discretion to impose a lower sentence to avoid disproportionate punishment where the juvenile possesses mitigating qualities

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

of youth. Moreover, "youth is not a per se mitigating factor in the context of sentencing young adults." *State v. Gregg*, 196 Wn.2d at 478.

Because the sentencing judge was presented with and considered Forcha-Williams' youthfulness and imposed an above midrange minimum term, it is not more likely than not that Forcha-Williams would have received a lower sentence had Judge Thorpe fully understood her discretion. Accordingly, we reverse the Court of Appeals and dismiss Forcha-Williams' petition.

## III. CONCLUSION

We reverse the Court of Appeals on both issues. A court does not have discretion to replace an indeterminate sentence with a determinate sentence. Further, a procedural *Houston-Sconiers* error alone does not establish prejudice on collateral review. Because Forcha-Williams fails to show prejudice by a preponderance of the evidence, we dismiss his petition.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1

_____
Owens, J.

WE CONCUR:

_____          _____

_____          _____
Johnson, J.

_____          _____
Madsen, J.

_____          _____
Stephens, J.                                Lewis, J.P.T.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

No. 100051-1

GORDON McCLOUD, J. (dissenting)—Derrius Forcha-Williams filed a

motion to vacate (later converted to a personal restraint petition or PRP) more than

one year after his judgment became final.[1]  That means that the one-year time limit

on PRPs, RCW 10.73.090(1), bars his claim—unless his claim meets an exception

to that time bar.[2]

His claim did meet such an exception.  Forcha-Williams claimed that the

trial court failed to consider his youthfulness as a mitigating factor at the time of

sentencing, that this failure caused prejudice, and that the remedy was resentencing

---

[1] Forcha-Williams' judgment became final when the Court of Appeals issued its mandate on June 9, 2017 because he did not seek further review in our court. State's Resp. to PRP, App. B at 1 (Mandate) (Wash. Ct. App. No. 79041-2-I (2019)); RCW 10.73.090(3)(b).  Then, on July 5, 2018, more than one year later, Forcha-Williams filed a motion for relief from judgment in the superior court. In October 2018, the superior court determined that the motion was time barred by RCW 10.73.090 and transferred that motion to the Court of Appeals for consideration as a PRP. Order Transferring Mot. for Relief from J. to Ct. of Appeals (Wash. Ct. App. No. 79041-2-I (2018)).

[2] A PRP must generally be filed within one year of the date on which the judgment becomes final. RCW 10.73.090(1). This time limit does not apply to the claims listed in RCW 10.73.100.

1

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

to allow the trial court to impose a minimum term lower than the standard range.[3]

Mot. for Relief from J. & To Set Show Cause Hr'g at 4 (Wash. Ct. App. No. 79041-2-I (2018)). The majority correctly acknowledges that *that* claim was timely because our earlier decision in *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), is retroactively applicable and material to that claim. Majority at 18 n.2; *see generally* RCW 10.73.100(6).

But the Court of Appeals did not address that claim. Instead, the Court of Appeals recast Forcha-Williams' claim as a challenge to the statutory *maximum* term of life under the applicable indeterminate sentencing scheme. The Court of Appeals then granted relief on that statutory maximum claim—without ever deciding the claim Forcha-Williams raised in the original CrR 7.8 motion. *In re*

---

[3] Forcha-Williams argued that he meets the exception for significant, retroactively applicable changes in the law that are material to the petitioner's claim. RCW 10.73.100(6). He continued that *Houston-Sconiers* constituted just such a change. Resp. to State's Mot. to Transfer at 2-3 (Wash. Ct. App. No. 79041-2-I (2018)); Mot. for Relief from J. at 1-3 (Wash. Ct. App. No. 79041-2-I (2018)). The State disagreed. It argued that Forcha-Williams' PRP was untimely because *Houston-Sconiers* was not "material" to his claim. State's Resp. to PRP at 5-12 (Wash. Ct. App. No. 79041-2-I (2019)). But then, in a supplemental brief in the Court of Appeals, the State changed positions and instead argued that Forcha-Williams' PRP was actually timely. Suppl. Br. of Resp't Regarding *In re Pers. Restraint of Ali* and *In re Pers. Restraint of Domingo-Cornelio* at 3 (Wash. Ct. App. No. 79041-2-I (2020)) (stating that Forcha-Williams meets the exception in RCW 10.73.100(6)).

The court, of course, must determine whether to accept or reject such a concession on a point of law. *State v. McKee*, 193 Wn.2d 271, 278-79, 438 P.3d 528 (2019).

2

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

*Pers. Restraint of Forcha-Williams*, 18 Wn. App. 2d 167, 181, 490 P.3d 255

(2021).

The majority correctly rejects the Court of Appeals' decision on that

statutory maximum claim (which the Court of Appeals created and sought

supplemental briefing to address). As the majority correctly explains, "*Houston-*

*Sconiers* does not give judges the discretion to lower the maximum punishment or

impose a determinate sentence" where, as here, the youthful defendant is sentenced

under an indeterminate sentencing scheme. Majority at 18.

In fact, as the majority further explains, that means that the claim that the

Court of Appeals created and on which it granted relief was not timely under RCW

10.73.100(6) because "*Houston-Sconiers* is not material to a petition which

challenges the statutory maximum." *Id*. at 18 n.2.[4] That means that the statutory

---

[4] Our decision in *Houston-Sconiers* held, in part, that a lengthy statutory mandatory *minimum* sentence, under a *determinate* sentencing scheme, which gave the juvenile offender *no possibility of early release*, was unconstitutional; it further held that the remedy was to provide the sentencing court with discretion to depart below the mandatory minimum sentence. Forcha-Williams, in contrast, challenges his statutory *maximum* sentence, under an *indeterminate* sentencing scheme that provides a *presumption of releasability* before the ISRB (Indeterminate Sentence Review Board); he seeks the remedy of a determinate sentence. Forcha-Williams' claim is so different in challenges raised and remedy sought that *Houston-Sconiers* does not help him—or, in the words of RCW 10.73.100(6), *Houston-Sconiers* is not material to his sentencing claim.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

one-year time limit on PRPs, RCW 10.73.090(1), bars this claim because it fails to meet the retroactivity/materiality exception to that time bar.

That should have been the end of the majority's discussion. There is absolutely no justification for going on to discuss whether Forcha-Williams would have been able to prove prejudice resulting from this untimely claim had it been timely. In fact, a PRP raising an untimely claim is usually subject to dismissal— not used as a basis to analyze prior precedent and essentially overrule it.

But that still leaves Forcha-Williams' original challenge to his sentence at the low end of the standard range. That is the one that the majority correctly calls "timely": it is timely because it relies on controlling precedent, which is retroactively applicable and material to his case. That is the claim that the Court of Appeals did not reach—and the claim on which no party petitioned for review.

The majority reaches that claim anyway. And the majority uses both that undecided, timely, minimum term claim and the time-barred maximum term claim to upend recent controlling precedent of this court. I disagree with the majority's decision to opine on the merits of the untimely claim and its decision to undermine recent controlling precedent in the course of reaching the claim that is not properly before us.

Our case law does not allow us to do that.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

I therefore respectfully dissent.

I.      The merits of the *Domingo-Cornelio*[5] and *Ali*[6] decisions are not properly before this court

The first problem is that the majority has ruled that Forcha-Williams' PRP contains two claims—one timely and one time-barred. Usually, the remedy in this situation —where one claim is timely and the other is not—is to dismiss the entire PRP without addressing the merits. RCW 10.73.100; *In re Pers. Restraint of Hankerson*, 149 Wn.2d 695, 697, 72 P.3d 703 (2003). The majority does not mention this option.

On the other hand, Forcha-Williams really raised only one claim. It was the Court of Appeals that raised the other one. *See* majority at 18 n.2 ("Here, the Court of Appeals reframed the issues and broadened the scope of *Houston-Sconiers* to authorize relief not initially requested by Forcha-Williams."). And since it was the Court of Appeals that raised the untimely claim, it seems unfair to penalize Forcha-Williams for it. So a court should decide it.

---

[5] *In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 474 P.3d 524 (2020), *cert. denied*, 141 S. Ct. 1753 (2021).

[6] *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 474 P.3d 507 (2020), *cert. denied*, 141 S. Ct. 1754 (2021).

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

But not this court. The merits of that timely claim are not properly before us. Forcha-Williams' case comes before this court on the State's petition for review. The State sought review of the Court of Appeals' decision authorizing trial courts to depart below the statutory maximum portion of an indeterminate sentencing scheme, and Forcha-Williams did not file a cross petition for review as to the minimum term of his sentence in our court.[7] That means no party raised that issue in our court, which normally precludes review. RAP 13.7(b) ("If the Supreme Court accepts review of a Court of Appeals decision, the Supreme Court will review only the questions raised in the motion for discretionary review . . . ."); *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 225 n.11, 995 P.2d 63 (2000) (to

---

[7] The State requested review of two questions: (1) "Does *State v. Houston-Sconiers* authorize a sentencing court to ignore the indeterminate sentencing scheme for serious sex offenses and instead impose determinate sentencing, which is legislated for other crimes?" and (2) "Did the court of appeals err by concluding that a personal restraint petitioner raising a claim under *Houston-Sconiers* meets his burden to establish actual and substantial prejudice whenever the original sentencing court failed to consider youth or misunderstood the extent of its discretion?" Mot. for Discr. Rev. at 1 (footnote omitted). In his response, Forcha-Williams' argument addressed only the ability of a court to impose a determinate sentence in place of an indeterminate sentence. Resp. to Mot. for Discr. Rev. at 3-5. Then in his supplemental brief in this court, Forcha-Williams never distinctly argued for discretion to impose a lower minimum term. In fact, the only time he even mentions a minimum term is in an argument about imposing *any* sentence the trial judge wanted: "A judge sentencing a juvenile for a crime governed by an indeterminate sentencing scheme could certainly determine that the presumptive minimum or maximum terms were too harsh and/or that subjecting a juvenile to an indeterminate sentence, much less a life maximum, while acceptable for an adult, was too punitive for a child." Resp't's Suppl. Br. at 11.

6

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

preserve issue it must be raised in either motion for discretionary review or answer

(citing RAP 13.7(b)); *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 803

n.3, 23 P.3d 477 (2001) (declining to consider issue not raised in motion for

discretionary review (citing RAP 13.7(b))); *see also State v. Collins*, 121 Wn.2d

168, 178, 847 P.2d 919 (1993) ("This court has required that the petition for review

state the issues with specificity." (citing *Clam Shacks of Am., Inc. v. Skagit County*,

109 Wn.2d 91, 98, 743 P.2d 265 (1987))). Instead, Forcha-Williams now argues in

our court that "[t]he question posed by this case is whether the discretion to impose

'*any sentence*' below the otherwise applicable SRA[8] provisions extends to the

statutory mandate of indeterminate life terms for certain crimes." Resp't's Suppl.

Br. at 2 (emphasis added).

I therefore disagree with the majority's decision to address the merits of the

untimely claim and the merits of the claim that was not presented to us.  But

because the majority has done so, I need to do so also—to show that its

conclusions on the merits lack support in our precedent.

---

[8] Sentencing Reform Act of 1981, ch. 9.94A RCW.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

II.     The majority ignores these procedural problems and silently overrules *Domingo-Cornelio*'s holding that a PRP petitioner shows prejudice if *either* of the *Houston-Sconiers* mandates is violated, replacing it with a holding that a PRP petitioner does not show prejudice unless *both* of the *Houston-Sconiers* mandates are violated

The majority ignores the procedural problems identified above to get straight to the merits. Its merits discussion then undermines the holdings of two recent controlling decisions of this court. Specifically, the majority adopts an argument about the supposed procedural and nonretroactive nature of *Houston-Sconiers*—an argument that was explicitly rejected by the controlling majority opinions in *Ali* and *Domingo-Cornelio* and endorsed only by their dissents.

Under the recent majority holding in *Domingo-Cornelio*, once a petitioner meets an exception to the time bar for a PRP, "[a] petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the constitutional error in order to obtain relief on collateral review." 196 Wn.2d at 267; *Ali*, 196 Wn.2d at 242-43.

The constitutional error that Forcha-Williams raises is that the sentencing court violated our decision in *Houston-Sconiers*. In *Houston-Sconiers*, we held that the Eighth Amendment imposes a "dual mandate" on the trial court when sentencing a defendant who committed a crime as a juvenile: "sentencing courts

8

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

*must* consider youth and *must* have discretion to impose any exceptional sentence downward based on youth." *Ali*, 196 Wn.2d at 236; U.S. CONST. amend. VIII.

Here, the majority agrees that the trial judge violated one of those mandates—the trial judge did not believe that she had discretion to impose a sentence below the low end of the SRA range. Majority at 19.

The majority now purports to hold that this violation of a single one of the *Houston-Sconiers* mandates is not enough to show the requisite prejudice. *Id*. It opines—for the first time—that a PRP petitioner must show by a preponderance of the evidence that the sentencing court violated *both* of the *Houston-Sconiers* mandates. *Id*.

But we said the exact opposite in *Domingo-Cornelio*. In that case, which was also decided on collateral review, we held that a PRP petitioner shows actual and substantial prejudice by identifying a violation of only *one* of the *Houston-Sconiers* mandates. *Domingo-Cornelio*, 196 Wn.2d at 267-68. There, the sentencing court was tasked with sentencing Domingo-Cornelio, who was between 15 and 17 years old at the time of his crimes, for convictions of first degree rape of a child and child molestation. *Id*. at 259. The court imposed a sentence of 240 months, the bottom of the SRA standard sentencing range. *Id.* at 261. The trial court did not say whether it had the discretion to impose a sentence below the SRA

9

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

guideline. It simply imposed the lowest possible SRA guidelines sentence. But it was unclear whether the judge had considered Domingo-Cornelio's juvenile status and the mitigating qualities of his youth in imposing the sentence. *Id.* at 267. The defense lawyer had not argued those points at all.

The majority in *Domingo-Cornelio* had to determine whether the petitioner suffered prejudice based on limited statements in the record about whether the court did or did not consider youth at sentencing. We therefore had to address, and decide, how to determine prejudice when the sentencing judge did not state on the record what she would have done at a hypothetical sentencing where a party had produced evidence that youthfulness adversely impacted the defendant's actions. In response to this set of facts, the *Domingo-Cornelio* majority held:

> [A]ctual and substantial prejudice is not limited to circumstances where defense counsel makes an argument that is not legally available and the sentencing judge explicitly states that they would deviate from the SRA on that basis if they could.
>
> We do not expect lawyers to make every conceivable argument on the possibility that it may someday be recognized as a basis for an exceptional sentence. Nor do we expect sentencing judges to always signal in their oral rulings that they would exercise more discretion if they felt they had the authority to do so. *Instead, a petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration.*

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> Unless the court meaningfully considers youth and knows it has absolute discretion to impose a lower sentence, we cannot be certain that an adult standard range was imposed appropriately on a juvenile under *Houston-Sconiers*.

*Id.* at 267-68 (emphasis added) (footnote omitted).

This was *Domingo-Cornelio*'s central holding as to actual and substantial prejudice—that petitioner suffers prejudice when the sentencing judge violates *either* of the *Houston-Sconiers* mandates.[9]

This holding comported with the rest of the *Domingo-Cornelio* opinion, where the majority heavily emphasized that *both* mandates of *Houston-Sconiers* are equally crucial when sentencing juveniles. *Id.* at 263 ("[E]ven if Domingo-Cornelio's sentencing court had discretion to impose a lower sentence prior to *Houston-Sconiers*, Domingo-Cornelio could *not* have argued that it *must* consider his youth before imposing a standard range sentence."), 265-66 ("The requirement that sentencing courts *must* consider youth and *must* have discretion to impose any exceptional sentence downward based on youth were not dictated by existing precedent at the time Domingo-Cornelio's sentence became final."); *cf.*

---

[9] Both the majority and the State argue that the Court of Appeals "plucked" a single sentence from *Domingo-Cornelio* to claim that there is a per se prejudice rule. Majority at 23; Pet'r's Suppl. Br. at 22-23. As the above-quoted paragraph shows, the Court of Appeals did not "pluck[]" a single sentence but rather chose one sentence from a lengthy and well-reasoned portion of *Domingo-Cornelio*'s opinion to make its point.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

*Ali*, 196 Wn.2d at 246 ("It is *imperative* for courts to consider youthfulness at sentencing and for courts to have absolute discretion to impose any sentence below the SRA, including as little as no prison time, for crimes committed by children.").

In fact, the *Domingo-Cornelio* dissent—and the *Ali* dissent on which it relied—recognized the importance to the majority of both of the dual mandates. The *Domingo-Cornelio* dissent states in full, "For the reasons stated in my dissenting opinion in *In re Personal Restraint of Ali*, I dissent." 196 Wn.2d at 269 (Johnson, J., dissenting) (citation omitted). And the *Ali* dissent starts out with the following candid observation: "I disagree with the majority's conclusion that our cases establish a substantive rule of constitutional interpretation requiring retroactive application—though I agree our cases can be read to establish a procedural factor requiring sentencing judges to consider general qualities of youth in considering the discretionary sentencing decision." *Ali*, 196 Wn.2d at 247 (Johnson, J., dissenting).

Thus, the *Domingo-Cornelio* and *Ali* majorities and dissents all candidly acknowledged that those decisions hold that a PRP petitioner suffers prejudice if a sentencing judge violates *either* of the *Houston-Sconiers* mandates—because all of *Houston-Sconiers* applies retroactively. That's what the *majority opinions* in

12

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

*Domingo-Cornelio* and *Ali* said over and over and over—they never limited

retroactivity to just one of the *Houston-Sconiers* mandates.[10]

To be sure, *Domingo-Cornelio*'s holding on what constitutes actual and

substantial prejudice stands in tension with our holding on what constitutes actual

and substantial prejudice in *In re Personal Restraint of Meippen*, 193 Wn.2d 310,

440 P.3d 978 (2019). In the appropriate case, this court could address whether we

should follow the general rule that the more recent decision—here, *Domingo-

Cornelio*—effectively abrogates contrary opinions expressed in *Meippen*. *See, e.g.*,

*State v. Scanlan*, 193 Wn.2d 753, 766, 445 P.3d 960 (2019) (adopting primary

---

[10] *E.g.*, *Domingo-Cornelio*, 196 Wn.2d at 266-67 ("*Houston-Sconiers* announced a substantive constitutional rule. . . . It also established the mechanism necessary to effectuate that substantive rule. . . . *Houston-Sconiers* constitutes a significant change in the law that is material to Domingo-Cornelio's sentence and requires retroactive application." (citing *Ali*, 196 Wn.2d at 237-42)); *Ali*, 196 Wn.2d at 226 ("We hold that *Houston-Sconiers* constitutes a significant and material change in the law that requires retroactive application."), 231 ("'[T]hese cases make two substantive rules of law clear: first, "that a sentencing rule permissible for adults may not be so for children," rendering certain sentences that are routinely imposed on adults disproportionately too harsh when applied to youth, and second, that the Eighth Amendment requires another protection, besides numerical proportionality, in juvenile sentencings—the exercise of discretion.'" (quoting *Houston-Sconiers*, 188 Wn.2d at 19 n.4 (quoting *Miller v. Alabama*, 567 U.S. 460, 481, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)), 235 ("If *Houston-Sconiers* applies retroactively, it would materially affect Ali's sentence because it would allow the sentencing judge discretion to run the weapon enhancements concurrently or impose any exceptional sentence downward based on youthfulness."), 236 ("*Houston-Sconiers* announced a new substantive constitutional rule that must be applied retroactively upon collateral review."), 239 ("The fact that a juvenile *could* receive a sentence within the adult standard range if the sentencing court complies with the dual requirements of *Houston-Sconiers* does not render *Houston-Sconiers* procedural.").

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

purpose test for confrontation clause claims and impliedly abrogating cases that

used other tests). And in the appropriate case, this court could address whether

*Domingo-Cornelio* provides the more realistic view of sentencing.[11]

But an untimely case in which the merits are not properly before our court is

not the appropriate case in which to do so.

III. Even under the majority's new test, Forcha-Williams shows that the sentencing judge violated *both Houston-Sconiers'* mandates and failed to consider Forcha-Williams' youthfulness as a mitigating factor

As stated above, the majority agrees that the trial court violated one of the

*Houston-Sconiers* mandates—the mandate that sentencing judges must have, and

must understand that they have, "discretion to impose any exceptional sentence

downward based on youth." *Ali*, 192 Wn.2d at 236. And as also stated above,

---

[11] Judges receive briefing and arguments on the law applicable to the case, the equitable considerations at issue, and the views of the parties, the victims, and others. Judges receive that input both before the sentencing hearing and in person, in open court. Judges then consider that input, consider their own legal research, and impose a sentence. They typically explain the reasons for the sentence for all to hear. And they do so in the formality of open court at a moment of extremely high emotions. This is certainly a situation that calls for an explanation of the reasons for the sentence the judge imposes. But it is not a situation that calls for an explanation of the reasons for a sentence that the judge does not impose but that the judge might wish they could impose. The *Domingo-Cornelio* majority understood this reality and therefore did not require that both mandates of *Houston-Sconiers* be perfectly reflected in the record. 196 Wn.2d at 267 ("[A]ctual and substantial prejudice is not limited to circumstances where defense counsel makes an argument that is not legally available and the sentencing judge explicitly states that they would deviate from the SRA on that basis if they could.").

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

*Domingo-Cornelio* held that violation of that one mandate, alone, suffices to show prejudice. 196 Wn.2d at 267-68.

But even if the majority's new holding—that PRP petitioners must show that the sentencing court violated both of *Houston-Sconiers*' mandates to prevail—carries the day, Forcha-Williams has still shown prejudice. He has shown that the sentencing court also violated the second *Houston-Sconiers* mandate — the mandate "that sentencing courts *must* consider youth" as a mitigating factor. *Id.* at 265.

Our court has held that when determining whether a defendant's juvenile status merits a sentence below the standard range, the court must meaningfully consider youth:

> the court must consider mitigating circumstances related to the defendant's youth—including age and its "hallmark features," such as the juvenile's *"immaturity, impetuosity, and failure to appreciate risks and consequences." Miller* [*v. Alabama*,] 567 U.S. [460,] 477, [132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)]. It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and "the way familial and peer pressures may have affected him [or her]." *Id*. And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated. *Id*.

*Houston-Sconiers*, 188 Wn.2d at 23 (emphasis added) (fourth alteration in original).

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

The majority claims that the sentencing court in this case did so—that it "was presented with and considered the potential mitigating qualities of youth." Majority at 25. Specifically, the majority states that defense counsel argued that "youth mitigated [Forcha-Williams'] culpability," that defense counsel argued that Forcha-Williams "was capable of rehabilitation," that the court "referenced Forcha-Williams' youth several times," and that the court was presented with information about Forcha-Williams' "family and home environment, school history, disciplinary record, and criminal history" in his presentence report. *Id.* at 26. The majority claims that there was "ample evidence in the record [that] shows that youth was presented and considered." *Id.* at 27.

I read the sentencing transcript differently.

Forcha-Williams was referred to as a "young man" throughout the proceeding by almost every party. State's Resp. to PRP, App. C at 919, 920, 923, 925, 929 (Sent'g Tr.) (Wash. Ct. App. No. 79041-2-I (2019)). Several parties also mentioned Forcha-Williams' "youth." *Id.* at 918 (victim stating that Forcha-Williams is "young"), 921 (defense counsel stating same). But no party explicitly mentioned his *juvenile* status at the time of the offense. The only person to mention that Forcha-Williams was not a "man" at the time of the offense but was in fact a *child* was Stephen Dozier, Forcha-Williams' mentor from the Royal Project, who

16

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

referred to Forcha-Williams as a "child" on several occasions. *Id.* at 926 ("This child needs help."). Even Forcha-Williams referred to himself multiple times as a "man." *Id.* at 928 ("I am ready to become a better man.")

Defense counsel mentioned once what could be characterized as an argument that juveniles have reduced culpability that impacts decision-making:

> And you know when we look at adolescent development, when we look at choices and decision-making, and I think we put them in that context, Derrius had a lot against him, and as a young man, once he's ultimately through with the Department of Corrections, and we have talked at length about an indeterminate sentence and what that is going to look like and what that means, he is going to have a lot stacked against him . . . .

*Id.* at 920. This statement does not really explore the issue of juveniles' "immaturity, impetuosity," and inability to appreciate risks.

The sentencing judge's mention of Forcha-Williams' youth (other than calling him a "young *man*" repeatedly) was limited. It stated, "Mr. Forcha-Williams, I have thought—thought a lot about your case, sir. It is incredibly indicative of what happens when kids step out of schooling. I see it time and time again. You are a young man."[12] *Id.* at 929.

---

[12] After sentencing Forcha-Williams, the court also stated, "It's not easy. I think as you sit here you have seen how not easy it is to go from being a teenager to an adult. From being a kid to an adult. We treat them very differently, don't we?" State's Resp. to PRP, App. C at 932 (Sent'g Tr.) (Wash. Ct. App. No. 79041-2-I (2019)). The Court of Appeals characterized this statement as the court considering Forcha-Williams' juvenile status. *In re Pers. Restraint of Forcha-Williams*, 18 Wn. App. 2d at 183. I disagree. This

17

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

The above-quoted material constitutes everything that was said about Forcha-Williams' youth during the sentencing hearing. This does not constitute "ample evidence" that the trial court considered the mitigating qualities of youth and the reduced culpability of juveniles. *Contra* majority at 27. In fact, there is nothing in the transcript that shows that the sentencing court or defense counsel fully understood the specific qualities that juvenile offenders possess that might mitigate their culpability.

The sentencing transcript certainly shows that Forcha-Williams' capacity for rehabilitation was discussed. State's Resp. to PRP, App. C at 920, 926, 929-31. And Forcha-Williams' home life and difficult childhood were mentioned. *Id.* at 919, 926, 932. However, these factors are not the "hallmark features" of youth and are often argued in adult sentencing hearings. *Miller*, 567 U.S. at 477. What is crucial when sentencing youth under *Houston-Sconiers* is to consider the significant differences in brain development that render a child incapable of fully being able to account for their decision-making. Specifically, a court must consider a juvenile's "'immaturity, impetuosity, and failure to appreciate risks and

---

statement occurred *after* Forcha-Williams was already sentenced and seems to be a vague reference to the difference Forcha-Williams has experienced when he was previously sentenced in juvenile court to his current experience in adult court.

18

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

consequences.'" *Houston-Sconiers*, 188 Wn.2d at 23 (quoting *Miller*, 560 U.S. at

477). That did not occur here.

In fact, Forcha-Williams' sentencing looks a lot like Domingo-Cornelio's

sentencing. In *Domingo-Cornelio*, defense counsel emphasized the defendant's

youth, argued that the defendant had a lot of familial support, and made a passing

reference to the fact that youth should be a mitigating factor.[13] 196 Wn.2d at 261

("I think that society, in general, does not demand acts that a teenager did, which

---

[13] In full, the relevant argument by defense counsel in *Domingo-Cornelio* stated:

"My client has a lot of family support, Your Honor. He was a juvenile when these incidents took place. I would like the Court to consider the fact that my client did not take the witness stand at this trial. He sat through the trial. He heard what was testified to.

The standard range starts out at 20 years, Your Honor, 240 months. Now, I don't know what benefit to either my client's psychological or psychosexual health or to society or to the victim and their family it would do to give him more than the low end. 20 years, Your Honor. He is barely 20 himself. 20 years is a very long time in prison, and yes, the standard range goes above that quite a bit, but I would ask the Court to consider that the victim seems to be progressing through school right on time, on course. I believe she has been able to move on with her life after these acts, and I am glad that she has, and I hope that she has a decent—better than decent, a good life.

I think that society, in general, does not demand acts that a teenager did, which weren't reported for four or five years, should result in more than 20 years in prison, and I'm asking that the Court consider all of the facts here, the lack of information from the family of the victim in the Presentence Investigation, and consider that Endy Domingo[-]Cornelio will be in prison for a minimum for 240 months, and that is long enough, Your Honor."

196 Wn.2d at 260-61 (alteration in original).

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

weren't reported for four or five years, should result in more than 20 years in prison."). The facts in *Forcha-Williams* and *Domingo-Cornelio* are substantially similar—although unlike *Forcha-Williams*, both the State and defense counsel specifically mentioned Domingo-Cornelio's *juvenile* status at the time of the crime. *See id.* at 260.

The main (and for the majority, the dispositive) difference between Domingo-Cornelio's sentencing and Forcha-Williams' sentencing is that Domingo-Cornelio received a sentence at the bottom of the standard SRA range while Forcha-Williams received a sentence in the middle of the range. The majority turns this one fact into a new rule of law—now, the court must have sentenced the juvenile to the lowest possible sentence in the standard range for the youth to gain relief under *Houston-Sconiers*. Majority at 25. That is not the result required by *Ali* or *Domingo-Cornelio.*

I disagree with the majority's decision to use this PRP as a vehicle to revisit the prejudice standards announced in *Ali* and *Domingo-Cornelio*. I would adhere to that prior precedent, instead.

CONCLUSION

*Houston-Sconiers* constitutes a significant, retroactively applicable, change in the law. And it is "material" to Forcha-Williams' original claim, which is not

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

before this court, and which the Court of Appeals did not decide. This portion of Forcha-Williams' PRP should therefore be remanded to the Court of Appeals to address the claim that Forcha-Williams actually raised.

As to the other portion of his PRP, the majority correctly holds that *Houston-Sconiers* is not "material" to the only claim Forcha-Williams articulates in *this* court: a challenge to an indeterminate, parolable, statutory maximum sentence. Under our precedent, we should dismiss that claim rather than addressing it on the merits. The majority nevertheless goes on to discuss whether Forcha-Williams shows actual and substantial prejudice. This part of the majority's opinion is unnecessary dicta. In my view, it is also incorrect. The majority purports to overrule our recent controlling precedent in *Domingo-Cornelio* without saying so. *Domingo-Cornelio* held that a violation of *either* of the *Houston-Sconiers* mandates constitutes prejudice. We should stand by this holding.

I would therefore deny the untimely claim without reaching the unnecessary analysis of prejudice and remand the timely claim originally raised by the petitioner himself to the Court of Appeals to decide in the first instance. I therefore respectfully dissent.

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Forcha-Williams*, No. 100051-1
(Gordon McCloud, J., dissenting)

_____
Gordon McCloud, J.

_____
González, C.J.

_____
Yu, J.

_____
Whitener, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.